# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMOS CHAN CHAN JR., <br>     Plaintiff, <br><br> v. <br><br> CHILDREN'S NATIONAL MEDICAL CENTER, <br>     Defendant. | Civil Action No. 18-2102 (CKK) |

**MEMORANDUM OPINION**
(September 18, 2019)

Plaintiff Amos Chan Chan, Jr., alleges that Defendant Children's National Medical Center ("CNMC") failed to pay him proper wages, retaliated against him because he engaged in a protected activity, and further created a retaliatory hostile work environment.

Before the Court is CNMC's [23] Partial Motion to Dismiss the Amended Complaint for Failure to State a Claim. CNMC makes several arguments in support of its Partial Motion to Dismiss. First, CNMC argues that the D.C. Wage Payment Act and the Fair Labor Standards Act ("FLSA") do not provide a cause of action for Chan Chan's claims in Counts I and II. Second, CNMC contends that, except for Chan Chan's claim based on actions post-dating October 18, 2017, most notably his termination, his retaliation claim in Count III is time-barred. Lastly, CNMC claims that Chan Chan has failed to allege sufficient facts in support of his retaliatory hostile work environment claim.

Upon consideration of the briefing,[1] the relevant legal authorities, and the record as a whole, the Court will **GRANT IN PART** and **DENY IN PART** CNMC's Partial Motion to

---

[1] The Court's consideration has focused on the following documents:
- Pl.'s Am. Compl. ("Am. Compl."), ECF No. 22.

1

Dismiss. The Court concludes that the D.C. Wage Payment Act and the FLSA do not provide causes of action for Chan Chan's claims in Counts I and II of the Amended Complaint. The Court further concludes that Chan Chan conceded that his claims under Count III are time-barred, except for any retaliation claim premised on actions post-dating October 18, 2017. However, the Court finds that Count IV of Chan Chan's Amended Complaint withstands CNMC's Partial Motion to Dismiss because he alleges sufficient facts to support his retaliatory hostile work environment claim. Accordingly, the Court **DISMISSES** Counts I, II, and III of the Amended Complaint, except for Chan Chan's retaliation claim under Count III based on actions occurring after October 18, 2017.

## I. BACKGROUND

For the purposes of this Partial Motion to Dismiss, the Court accepts as true the well-pled allegations in Chan Chan's Amended Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Chan Chan began working for CNMC in November 2009. Am. Compl. ¶ 5. In July 2014, he was transferred to the Environmental Services Department as a Floor Technician. *Id.* ¶ 6. One of his supervisors was Mavis Appleby. *Id.* ¶ 7. As a Floor Technician, his job duties primarily included waxing, shampooing, buffing, stripping, and recoating floors. *Id.* ¶ 6.

---

- Def.'s Mem. of P. & A. in Supp. of Its Partial Mot. to Dismiss ("Def.'s Mot."), ECF No. 23.
- Pl.'s Mem. of P. & A. in Opp'n to Def.'s Partial Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 24.
- Def.'s Reply to Pl.'s Opp'n to Def.'s Partial Mot. to Dismiss ("Def.'s Reply"), ECF No. 25.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

As part of his floor finishing duties, Chan Chan worked with hazardous chemicals without being provided any personal protective equipment. *Id.* ¶ 8. After CNMC switched to using these hazardous chemicals, he experienced adverse symptoms, which he reported to his supervisor Mavis Appleby. *Id.* ¶¶ 10–11. His supervisor provided him with goggles, but this did not alleviate his symptoms. *Id.* ¶ 11. She also reported these issues to upper management, yet CNMC took no action. *Id.* At one point, Chan Chan was told by supervisors to go to the emergency room, where he alerted poison control, but CNMC still undertook no preventative measures. *Id.* ¶ 12. Upper management further refused to accommodate his request for personal protective equipment. *Id.* ¶ 13. Chan Chan ultimately contacted the Federal Occupational Safety and Health Administration ("OSHA"), which issued a Citation and Notification of Penalty to CNMC on November 5, 2015 for failing to train employees on how to properly use these hazardous chemicals and failing to provide personal protective equipment. *Id.* ¶¶ 14–15.

While these events were occurring, Chan Chan felt that he was being discriminated against based on his Liberian national origin. *Id.* ¶ 16. For example, he was frequently called the "African." *Id.* ¶ 17. In August 2014, September 2014, August 2015, September 2015, and October 2015, he complained to Human Resources about "harassive and discriminatory" treatment from his supervisors; he also contacted the Equal Employment Opportunity Commission ("EEOC") on September 30, 2015, to request an investigation into his "retaliatory supervisor."[2] *Id.* ¶¶ 18–19, 23.

Following Chan Chan's communications to OSHA and the EEOC, Chan Chan was demoted in December 2015. *Id.* ¶ 20. He was tasked with new duties, including trash and

---

[2] While the Amended Complaint explains that Chan Chan "contact[ed] and fil[ed] a charge of discrimination with the EEOC," Am. Compl. ¶ 19, it does not explain what ultimately happened, such as whether there was any investigation or other proceedings.

3

housekeeping duties, power washing, and cleaning patient rooms that had blood and other bodily fluids. *Id.* Some of his new duties usually had two people assigned to handle them, but Chan Chan was assigned to complete these tasks on his own. *Id.* ¶ 21.

In addition to his duties changing, Chan Chan experienced "ridicule, insult," and pervasive negative treatment that left him "afraid to go to work" and caused "emotional distress." *Id.* ¶ 25. His supervisor, Appleby, "issued and signed off on" numerous corrective actions against Chan Chan in March 2015, May 2015, July 2015, August 2015, January 2016, February 2016, and March 2016. *Id.* ¶¶ 23–24. Such corrective actions can result in "immediate suspension or termination." *Id.* ¶ 23. Moreover, Chan Chan was denied "overtime pay" and "opportunities to work overtime" until he was terminated. *Id.* ¶ 22.

Chan Chan complained about his demotion and discriminatory treatment, including to the union, and "followed up with complaints" in April 2017 and on September 21, 2017 about the disparate treatment that he received. *Id.* ¶¶ 26–28. He was then terminated on October 24, 2017. *Id.* ¶ 29. Chan Chan further alleges that while he was employed, he was paid at $18.50 an hour, but should have been paid $19.63 per hour according to his "own records." *Id.* ¶ 30.

Based on the facts alleged in this suit, Chan Chan states four claims for relief in his Amended Complaint: (1) unpaid wages under District of Columbia Code sections 32-1301 through 32-1303; (2) unpaid wages under the FLSA; (3) retaliation under the District of Columbia Human Rights Act ("DCHRA"); and (4) retaliatory hostile work environment under the DCHRA.

## II. LEGAL STANDARD

CNMC moves to partially dismiss Chan Chan's Amended Complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Federal Rules require that a complaint include "'a short and plain statement of the claim showing

4

that the pleader is entitled to relief,'" in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 556, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

CNMC moves to dismiss Counts I, II, and IV of the Amended Complaint in their entirety, and moves to dismiss Count III of the Amended Complaint except as to any retaliation claim under the DCHRA based on actions that post-date October 18, 2017, including Chan Chan's October 24, 2017 termination. The Court finds grounds to dismiss Counts I and II in their entirety and Count III, except for Chan Chan's retaliation claim based on actions post-dating October 18, 2017. However, the Court finds that Count IV of the Amended Complaint has pled sufficient facts to support Chan Chan's retaliatory hostile work environment claim.

A.  Chan Chan's claim for unpaid wages is not cognizable under the D.C. Wage Payment Act.

Chan Chan claims that CNMC failed to pay him proper wages until he was terminated, and when he was terminated, based on his records that he should have been paid $19.63 per hour instead of $18.50 an hour. Am. Compl. ¶¶ 30–33. In response, CNMC argues that the provisions of the D.C. Wage Payment Act relied upon by Chan Chan do not provide a cause of action for Chan Chan's claim. *See* Def.'s Mot. at 4–5. The Court agrees that the D.C. Wage Payment Act does not create a cause of action for wage disputes like this one, where there are no sufficiently pled minimum wage or unpaid overtime claims.

District of Columbia Code sections 32-1301 through 32-1303, the sections that Chan Chan relies upon in his Amended Complaint, are part of the D.C. Wage Payment Act, which governs the payment and collection of wages. *See* D.C. Code §§ 32-1301–12 (subchapter I of Chapter 13, which is titled "Payment and Collection of Wages"). Section 32-1301 provides definitions. *Id.* § 32-1301. Section 32-1303 governs "[p]ayment of wages [earned] upon discharge or resignation of [an] employee and upon suspension of work" in addition to the "employer's liability for failure to make such [a] payment." *Id.* § 32-1303. Section 32-1302 covers "[w]hen wages must be paid" and relevant exceptions. *Id.* § 32-1302. In particular, it provides the when and how of wage payments:

> An employer shall pay **all wages earned** to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month; except, that all bona fide administrative, executive, and professional employees . . . shall be paid at least once per month; provided, however, that an interval of not more than 10 working days may elapse between the end of the pay period covered and the regular payday designated by the employer, except where a different period is specified in a collective agreement between an employer and a bona fide labor organization; provided further, that where, by contract or custom, an employer has paid wages at least once each calendar month, he may lawfully continue to do so. Wages shall be paid on designated paydays in lawful money of the United States, or checks on banks payable upon demand by the bank upon which drawn.

*Id.* (emphasis added). Section 32-1308 authorizes private actions for violations and provides for, among other things, recovery of "payment of any back wages unlawfully withheld" and "[l]iquidated damages equal to treble the amount of unpaid wages." *Id.* § 32-1308.

CNMC argues that the Act does not provide a private cause of action for disputing wage rates. Def.'s Mot. at 4–5. In his Opposition, Chan Chan focuses on the phrase "employer[s] shall pay all wages *earned*" in section 32-102, and contends that, based on this language, the Act governs this dispute regarding whether Chan Chan was paid according to the proper wage rate. *See* Pl.'s Opp'n at 8–9. This reading, however, misunderstands the Wage Payment Act.

While the Act generally "provides a cause of action for employees to recover 'unpaid wages,'" *Marsans v. Commc'ns Workers of Am.*, No. Civ. A. 87-0782 (RCL), 1989 WL 43831, at *7 (D.D.C. Apr. 19, 1989), it is "narrowly construed and applies only when wages are not in dispute," *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 92 n.7 (D.D.C. 2014). "The Wage Payment Act does not apply to disputes over the amount of wages due to an employee." *Iraheta v. Magic Meals, Inc.*, 201 F. Supp. 3d 172, 174 (D.D.C. 2016), *vacated on other grounds*, No. 15-cv-1121 (RMC), 2017 WL 1086625 (D.D.C. Feb. 22, 2017); *see also Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 28–29 (D.D.C. 2004) (finding that section 32-1203 does not create cause of action for disputes over whether wages paid were correct and that plaintiff could argue wage dispute as contract action).

The cases that Chan Chan cites in support of his argument are not to the contrary. In *Wilson v. On the Rise Enterprises, LLC*, for example, the plaintiff believed that she had a fifty percent ownership interest in a restaurant and, moreover, she had been paid *no* wages during the time that she worked there. 305 F. Supp. 3d 5, 10–11 (D.D.C. 2018). Because she had received no wages, she had a cognizable claim that she had not been paid wages earned under section 32-1302. *Id.* at

7

16–17. Unlike the plaintiffs in *Wilson* and similar cases, Chan Chan is not alleging that he was not paid earned wages at all for time worked, but rather that he was paid according to the wrong wage rate. *See id.*; *see also Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (finding that plaintiff sufficiently pled claim based on allegations that she "routinely was not paid for the break-time hours that she worked"); *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 287 (D.D.C. 2015) (finding that plaintiffs' claim that "Defendants underreported and paid *nothing at all* to two Plaintiffs for certain hours worked" was "type of claim that [the Wage Payment Act] was intended to remedy"). The provisions of the D.C. Wage Payment Act relied upon by Chan Chan therefore do not create a cause of action by which Chan Chan can dispute whether his wage rate was lower than it should have been.

However, Chan Chan does allege in his Amended Complaint that he was "rejected overtime pay," and failure to pay earned overtime wages is a cognizable cause of action under the Act. Am. Compl. ¶ 22; *see Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 62–63 (D.D.C. 2012). It is unclear what Chan Chan means when he claims that he was "rejected overtime pay," as he may have worked overtime and was not paid for it, or he may not have been offered the opportunity to work overtime. In any event, this allegation is insufficient to state a claim. To state a claim for unpaid overtime, a plaintiff must "allege, with some specificity, that he worked overtime and did not receive compensation." *Driscoll*, 42 F. Supp. 3d at 58. Chan Chan has not done so here, as he has included no details and has not alleged specifically that he worked overtime and was not compensated for it. Accordingly, Count I fails to state a claim upon which relief can be granted, and the Court **DISMISSES WITH PREJUDICE** Chan Chan's Count I claim.[3]

---

[3] CNMC also argues that Chan Chan's claim brought under the D.C. Wage Payment Act is time-barred due to the applicable three-year statute of limitations. *See* Def.'s Mot. at 4 n.1. Because

### B. Chan Chan's claim for unpaid wages is not cognizable under the FLSA.

On the same basis as in Count I, Chan Chan claims that CNMC failed to pay him proper wages and to pay him the wages owed to him when he was terminated because he was underpaid. Am. Compl. ¶¶ 30, 34–36. CNMC moves to dismiss this Count because the FLSA does not provide a private cause of action to dispute an employee's wage rate when there are no minimum wage or overtime claims. Def.'s Mot. at 5. The Court agrees that the FLSA does not provide a cause of action by which Chan Chan can dispute his wage rate.

The FLSA provides a private cause of action for when employers violate certain provisions of the FLSA. *See* 29 U.S.C. § 216(b). For example, an "employer who violates the provisions of section 206 or section 207," which set forth minimum wage and overtime provisions respectively, *id.* §§ 206–07, are liable for "the amount of [the employee's] unpaid minimum wages, or their unpaid overtime compensation" plus "an additional equal amount as liquidated damages."[4] *Id.* 216(b). Chan Chan has not pointed out, nor does the FLSA provide, any specific provision relevant to disputes over wage rates.

Instead, Chan Chan contends that an employee need only "'prov[e] that he performed work for which he was not properly compensated,'" and suggests that he therefore need only plead that he was improperly compensated for his work. *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48,

---

the Court dismisses Count I on other grounds, it does not reach CNMC's statute of limitations arguments for this Count.

[4] Section 216(b) further provides a cause of action for when employers violate section 215(a)(3) or section 203(m)(2)(B) of the FLSA. 29 U.S.C. § 216(b). Section 215(a)(3) covers various violations while section 203(m)(2)(B) focuses on withholding tips. *Id.* §§ 215(a)(3), 203(m)(2)(B). Although Chan Chan has not clearly invoked any of the sections of the FLSA in his Amended Complaint or even in his Opposition, *see* Am. Compl. ¶¶ 34–36; Pl.'s Opp'n at 10, the Court reads Count II of the Amended Complaint as relying upon the sections specific to wages, which are sections 206 and 207. It therefore does not address the other two sections referenced in section 216(b) in depth.

55 (D.D.C. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)); *see* Pl.'s Opp'n at 8–10. The statement quoted by Chan Chan must be understood in context. This statement comes from the Supreme Court's 1946 opinion in *Anderson v. Mt. Clemens Pottery Co.*, in which the Court outlined how burdens of proof work in a specific context under the FLSA. According to the Court, because employers have the burden of keeping relevant records under the FLSA, in an FLSA case the plaintiff "has the burden of proving that he performed work for which he was not properly compensated," which he can generally satisfy by "securing the production of those records." 328 U.S. at 686–87. But when employers do not keep records, rather than penalizing the employee, the Court found that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88. So, although this statement of law is correct, it primarily relates to a burden of proof framework rather than outlining all the elements of a private cause of action under the FLSA.

More importantly, Chan Chan's contention that he need only show that he was improperly compensated overlooks that improper compensation is not a catch-all term. Instead, it refers to improper compensation under the FLSA, and as noted above, in the private cause of action context the FLSA primarily provides minimum wage and overtime provisions. *See* 29 U.S.C. §§ 206–07, 216(b); *see also Deloatch*, 797 F. Supp. 2d at 55–56 (discussing burden-shifting framework, but only in context of section 207 overtime claims at summary judgment stage). The Amended Complaint does not sufficiently allege a minimum wage or overtime claim under the FLSA.

Like with his claim under District of Columbia law, Chan Chan has noted that he was "rejected overtime pay." Am. Compl. ¶ 22. But as he has provided no details, Chan Chan has not sufficiently pled facts supporting a claim for unpaid overtime under the FLSA. *See Akinsinde*, 216 F. Supp. 3d at 42 (finding that plaintiff failed to sufficiently plead FLSA overtime claim because she "fail[ed] to allege that her uncompensated extra hours resulted in her working more than 40 hours in any given week"); *see also Lincoln-Odumu v. Med. Faculty Assocs., Inc.*, No. 15-cv-1306 (BAH), 2016 WL 6427645, at *13 (D.D.C. July 8, 2016) (finding that complaint sufficiently pled FLSA overtime claim because it "identifie[d] six specific weeks during the relevant period during which the plaintiff allege[d] she worked at least four and a half overtime hours for which she was never compensated"); *Carrillo v. Dandan, Inc.*, No. 13-cv-671 (BAH), 2013 WL 12316873, at *2–3 (D.D.C. Oct. 28, 2013) (finding that plaintiffs had sufficiently pled overtime claim under FLSA because they alleged "specific time periods when they worked, weekly, between forty-seven and fifty hours, but were paid only straight time").

Because Chan Chan's claim "implicates neither § 206 (minimum wage) nor § 207 (overtime)," he therefore "cannot assert a private cause of action under § 216(b)." *Malivuk v. Ameripark, LLC*, 694 F. App'x 705, 708 (11th Cir. 2017); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) ("[T]he FLSA is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold."); *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1134–35 (D.C. Cir. 2011) (quoting *Anderson*'s framework only in context of overtime claim); *Dove v. Coupe*, 759 F.2d 167, 173–75 (D.C. Cir. 1985) (same for minimum wage and overtime claims); *Hernandez v. Stringer*, 210 F. Supp. 3d 54, 61 (D.D.C. 2016) (same for overtime claim). Accordingly, Count II also fails

to state a claim upon which relief can be granted, and the Court **DISMISSES WITH PREJUDICE** Chan Chan's Count II claim.[5]

### C. Chan Chan has conceded that any retaliation claim under the DCHRA based on actions pre-dating October 18, 2017 is time-barred.

Chan Chan claims that CNMC retaliated against him for engaging in the protected activity of lodging complaints about the harassment and discrimination that he experienced. Am. Compl. ¶¶ 37–40. CNMC argues that Chan Chan's retaliation claim based on actions pre-dating October 18, 2017 are time-barred under the DCHRA's one-year statute of limitations. Def.'s Mot. at 6–7.

Under the DCHRA, "[a] private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof."[6] D.C. Code § 2-1403.16(a). The actions that Chan Chan appears to claim constitute retaliation in his DCHRA retaliation claim span from late 2015 (after he complained to OSHA, the EEOC, and Human Resources) through October 24, 2017 (when he was terminated). Am. Compl. ¶¶ 18–29. Chan Chan filed his Amended Complaint adding his Count III retaliation claim on October 18, 2018. Am. Compl. at 7. CNMC therefore argues that any retaliation claim premised on actions that occurred before October 18, 2017—one year earlier—are time-barred. Def.'s Mot. at 6–7.

---

[5] CNMC raises the argument in its Motion and Reply that the Collective Bargaining Agreement by and between Children's Hospital and Service Employees International Union pre-empts any state law claims and provides the exclusive remedy for wage disputes like Chan Chan's. Def.'s Mot. at 5–6; Def.'s Reply at 5–6. Because the Court finds that Count I and II should be dismissed on other grounds, it does not reach these arguments.

[6] The DCHRA further provides for tolling: "The timely filing of a complaint with the [D.C. Office of Human Rights] . . . shall toll the running of the statute of limitations while the complaint is pending." D.C. Code § 2-1403.16(a). While Chan Chan mentions in his Amended Complaint that he contacted the EEOC, Am. Compl. ¶ 19, there are no additional details about any investigation or conclusions reached. Moreover, Chan Chan mentions in his Opposition (but not in his Amended Complaint) that he filed a complaint with the D.C. Office of Human Rights that was ultimately dismissed, but he neither provides timing details nor asserts any tolling arguments. *See* Pl.'s Opp'n at 5–6.

Generally, "[b]ecause statute of limitations defenses often are based on contested facts, the court should be cautious in granting a motion to dismiss on such grounds; 'dismissal is appropriate only if the complaint on its face is conclusively time-barred.'" *Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). Here, however, Chan Chan has conceded this argument by not responding to it in his Opposition. "[Local Rule 7(b)] is understood to mean that if a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded." *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015) (internal quotation marks omitted), *cert. denied sub nom. Texas v. Davis*, 136 S. Ct. 981 (2016) (mem.); *see* LCvR 7(b) ("If [an opposition] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.").

Accordingly, the Court **DISMISSES WITH PREJUDICE** Chan Chan's claims in Count III, excepting any retaliation claim premised on actions post-dating October 18, 2017.

> D. The Amended Complaint has sufficiently pled facts in support of Chan Chan's retaliatory hostile work environment claim.

Chan Chan's Count IV contends that the actions taken by his supervisors and others resulted in a retaliatory hostile work environment as prohibited by the DCHRA. Am. Compl. ¶¶ 40–42. The DCHRA provides that:

> It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

D.C. Code § 2-1402.61.

To establish a prime facie case of retaliation, a plaintiff must therefore show "(1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Although the Complaint is not a model of clarity in laying out the distinct elements for Chan Chan's claims, the Court will nevertheless consider whether the Amended Complaint has pled enough facts in support of each of these elements.

> *1. Protected Activity*

First, the Amended Complaint has pled sufficient facts to support that Chan Chan engaged in a protected activity. Filing a charge of discrimination with the EEOC constitutes protected activity, if the employer is aware of it, as do more informal complains to supervisors about allegedly discriminatory conduct. *See, e.g.*, *Jones v. Washington Metro. Area Transit Auth.*, 205 F.3d 428, 433 (D.C. Cir. 2000) (affirming trial court's finding that sending letter to supervisor complaining of discrimination constituted protected activity); *Tsehaye v. William C. Smith & Co.*, 402 F. Supp. 2d 185, 197 (D.D.C. 2005), *aff'd*, 204 F. App'x 901 (D.C. Cir. 2006) ("[T]he law does not require a formal EEOC or court filing. . . . Tsehaye's escalation to Smith's Human Resources Department by filing a discrimination grievance against Petree constitutes a statutorily

protected activity."). Chan Chan does not allege whether his employer had knowledge of his contact with the EEOC. He does, however, allege that he complained to Human Resources regarding "harassive and discriminatory treatment from his supervisors" in August 2014, September 2014, August 2015, September 2015, and October 2015. Am. Compl. ¶¶ 18, 23. As making such complaints constitutes a protected activity, he has sufficiently pled this element.

2. *Materially Adverse Action*

Second, the Amended Complaint has sufficiently alleged that Chan Chan suffered a materially adverse action by his employer. This Circuit has recognized that a hostile work environment can constitute a materially adverse action for retaliation claims. *See Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011); *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006); *see also Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 78–79 (D.D.C. 2019) ("This Circuit has recognized that a hostile work environment can amount to a materially adverse action and therefore can satisfy the second element of a retaliation claim.").

"To prevail on a hostile work environment claim, a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 662 F.3d at 1250 (internal quotation marks omitted). Courts have interpreted "discriminatory intimidation" to require "a demonstration of *retaliatory*, rather than discriminatory, intimidation," meaning "intimidation based on the employee's participation in a protected activity rather than [his] membership in a protected class." *Román v. Castro*, 149 F. Supp. 3d 157, 166–67 (D.D.C. 2016); *see also, e.g.*, *Miles v. Kerry*, 961 F. Supp. 2d 272, 294 (D.D.C.2013) (describing it as "retaliatory intimidation"); *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 79 (D.D.C.2013) (referring to it as "retaliatory harassment"). Hostile work environment claims

are "based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

CNMC argues that Chan Chan has failed to allege sufficient facts to support this element. Chan Chan, however, has alleged numerous facts in support of this claim. For example, he claims that while and after he engaged in protected activities, he was "permanently demoted" in December 2015 and that his job duties changed accordingly, Am. Compl. ¶ 20; that he was given tasks to do on his own that usually required two people, *id.* ¶ 21; that he was not provided opportunities for overtime and overtime pay, *id.* ¶ 22; that he received numerous corrective actions in March 2015, May 2015, July 2015, August 2015, January 2016, February 2016, and March 2016, *id.* ¶¶ 23–24; that what he experienced was "ridicule, insult and pervasive treatment" that changed the terms of his employment, caused him to be afraid to go to work, and further caused him great emotional distress, *id.* ¶ 25; and that he was ultimately terminated on October 24, 2017, *id.* ¶ 29.

At bottom, Chan Chan has asserted that these acts were retaliatory in nature, and that they were severe enough to change the conditions of his employment, thus creating an abusive work environment. When these facts are considered cumulatively, Chan Chan has alleged enough conduct to support his claim at the motion to dismiss stage. *See, e.g.*, *Doe 1*, 369 F. Supp. 3d at 81 (finding that one plaintiff sufficiently pled facts to support retaliatory hostile work environment claim because plaintiffs had pled some conduct in support, and also finding that plaintiffs did not need to exhaustively list all actions evincing retaliatory intent in complaint); *Dunbar v. Foxx*, 246 F. Supp. 3d 401, 418 (D.D.C. 2017) (finding that summary judgment was inappropriate on retaliatory hostile work environment claim due to plaintiff's allegations of, among other things, "constant interference with and unfair scrutiny of her work performance," "excess ridicule," "lowered performance evaluations," "lack of adequate assistance or resources to meet the demands

of [a] project," and "a climate of fear and intimidation"); *Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010) (finding that plaintiff's retaliatory hostile work environment claim survived motion to dismiss because it "incorporat[ed] the purportedly discriminatory conduct that Winston experienced, and assert[ed] that the discriminatory conduct constituted a hostile work environment"); *Holmes-Martin v. Leavitt*, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (finding that because "plaintiff ha[d] alleged some conduct in support of her" hostile work environment claim, complaint had pled sufficient facts at motion to dismiss stage). Chan Chan has therefore pled enough for this element.

### 3. Causal Connection

Lastly, Chan Chan has also sufficiently alleged a causal connection between his engagement in the protected activity and the retaliatory conduct. "The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).

That is the case here. Chan Chan alleged that he engaged in protected activities at various times spanning from August 2014 through September 2017. Am. Compl. ¶¶ 18–19, 26–28. His engagement was sometimes swiftly followed by alleged retaliatory actions, such as the corrective actions issued to him. *Id.* ¶¶ 20–24, 29. For example, he complained to Human Resources about his supervisors' discriminatory conduct in September and October 2015 and filed a charge of discrimination with the EEOC on September 30, 2015. *Id.* ¶¶ 18–19, 23. Then, in December 2015, he was "permanently demoted" and his job duties significantly changed. *Id.* ¶ 20. He also complained about his supervisor's conduct on September 21, 2017 and was terminated on October 24, 2017. *Id.* ¶¶ 28–29. Taken together, the Amended Complaint alleges sufficient facts in support

of a causal connection. Accordingly, the Court finds that Chan Chan's retaliatory hostile work environment claim survives CNMC's Partial Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** CNMC's Partial Motion to Dismiss. Specifically, the Court concludes that Chan Chan's:

- Count I claim for unpaid wages under District of Columbia law is **dismissed with prejudice**, as the D.C. Wage Payment Act relied upon by Chan Chan does not provide a cause of action for wage rate disputes;

- Count II claim for unpaid wages under the FLSA is **dismissed with prejudice** because the FLSA also does not create a private cause of action for wage rate disputes; and

- Count III claim for retaliation based on actions pre-dating October 18, 2017 is **dismissed with prejudice**, as he conceded this argument by failing to respond to it in his Opposition.

The Court does not dismiss Chan Chan's Count III retaliation claim as to actions after October 18, 2017, including his termination on October 24, 2017. Moreover, the Court does not dismiss Chan Chan's Count IV retaliatory hostile work environment claim.

An appropriate Order accompanies this Memorandum Opinion.

Dated: September 18, 2019

                                                                       /s/
                                          COLLEEN KOLLAR-KOTELLY
                                          United States District Judge